No. 15-60205

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

GOOGLE INC.,

*Plaintiff-Appellee*,

*v.*

JAMES M. HOOD, III,

Attorney General of the State of Mississippi, in his official capacity,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Mississippi No. 3:14-CV-981
Before the Honorable Henry T. Wingate

## PLAINTIFF-APPELLEE GOOGLE'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING MOTION FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT BY *AMICI CURIAE*

FRED KRUTZ
DANIEL J. MULHOLLAND
FORMAN WATKINS & KRUTZ LLP
200 South Lamar Street, Suite 100
City Centre
Jackson, MS  39201
(601) 960-8600

CHRISTOPHER W. JOHNSTONE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

PETER G. NEIMAN
CHRISTOPHER J. BOUCHOUX
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

JAMIE S. GORELICK
PATRICK J. CAROME
BLAKE C. ROBERTS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

November 17, 2015

1.     Pursuant to Federal Rule of Appellate Procedure 27(b) and Fifth Circuit Rules 27.1 and 27.2, Plaintiff-Appellee Google Inc. moves the Court to reconsider its order granting the motion for counsel for one set of amici curiae—the private organizations the Digital Citizens Alliance (DCA), the Taylor Hooton Foundation, and Ryan United—to present oral argument on behalf of both the private organizations and 40 State Attorneys General (who filed a separate amicus brief authored by separate counsel).  *See* ECF 00513269275 (Nov. 13, 2015). Amici made their request on November 11, 2015.  *See* ECF 00513266329 (Nov. 11, 2015).  The order entered by the Clerk granted the opposed motion on November 13, before Google had the opportunity to file its opposition.  There are important facts that warrant reconsideration of that order.

2.     The lead private organization amicus, the DCA, is thoroughly intertwined with the defendant in this matter, Mississippi Attorney General Jim Hood.  During the underlying inquiry that led to this lawsuit, the same lawyer—former Mississippi Attorney General Michael Moore—was (A) deputized by Attorney General Hood as a Special Assistant Attorney General, charged with investigating Google, *see* ROA.2288-2289, and (B) paid by the DCA to lobby Attorney General Hood to investigate Google, *see* ROA.2292.  The DCA's lobbying efforts include joining with the Motion Picture Association of America to develop and implement the Attorney General's strategy to use a "media blitz,"

threats, and a subpoena to coerce Google into censoring third-party Internet content. *See* Declaration of Peter G. Neiman in Support of Plaintiff-Appellee Google's Motion for Reconsideration of the Order Granting Motion for Leave To Participate in Oral Argument by Amici Curiae ("Neiman Decl.") Ex. A at 161:15-162:6 (deposition testimony stating that DCA Executive Director Tom Galvin participated in discussions regarding the Attorney General's plan); *id.* Ex. B at D000907-D000908 (email attachment sent by the Attorney General's office stating the Attorney General's plan).[1]

3.     The DCA's entanglement with the Attorney General's office is so tight that the DCA took the position below (in the context of opposing a motion to compel it to produce documents) that it cannot readily separate when Mr. Moore was acting as the Attorney General's lawyer from when he was acting as the DCA's paid advocate. *See* Neiman Decl. Ex. C at 99:25-100:8.

4.     If the Attorney General wishes to hire an outside lawyer to represent him at oral argument in this matter, he is of course free to do so. But it is not proper for the Attorney General to (a) designate one DCA attorney (paid by the DCA to lobby him on this subject) as a member of his office, (b) adopt the DCA's strategy for pressuring Google, and then (c) ask the Court to treat oral argument

---

[1] Pursuant to Fed. R. App. P. 27(a)(2)(B)(i) & (a)(3)(A) and 5th Cir. R. 27.4, Google has attached the documents supporting its motion.

presented by a DCA attorney as if it were coming from a "friend of the court" offering a perspective separate from the Attorney General's.

5.      Under Federal Rule of Appellate Procedure 29(g), the participation of amici in oral argument is the exception, not the rule.  This Court accepts amicus briefs only:

> when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case …, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.

*In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J., in chambers)).  While this Court has not articulated a standard for permitting amici to participate in oral argument, it is surely more stringent than the standard for accepting amicus briefs.[2]

6.      The DCA's motion asserts that its oral argument will be "unique" because it is "well-situated to address the balance of equities and the public interest."  DCA Motion 3-4.  But the Attorney General's brief already discusses those considerations.  *See* AG Brief 47-50.  The DCA's motion fails to identify any specific arguments or points that the Attorney General has not made or cannot adequately make in his oral argument; indeed, it repeats the same points that were

---

[2] The DCA's motion cites cases in which other amici have been allowed to participate.  DCA Motion 2-3.  But none of those cases discussed the standard applicable to resolving a contested motion for leave to participate, and none involved circumstances like those present here.

made in the Attorney General's brief.  *Compare* DCA Motion 4 *with* AG Brief 47-50.

7.      Courts have recognized that it is improper to permit a litigant's "ally" to file an amicus brief that merely provides additional words to make the same argument.  *See Ryan*, 125 F.3d at 1063 (partisan amicus briefs "filed by allies of litigants" that "duplicate the arguments made in the litigants' briefs" are "an abuse" and "should not be allowed"); *see also, e.g.*, *National Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000).  That is surely even more true with respect to oral argument.  And the DCA is not just the Attorney General's ally here.  It is the organization that helped develop the Attorney General's strategy and paid the Attorney General's principal investigator to lobby the Attorney General on its behalf.  The DCA disclosed none of these facts.  Reconsideration is appropriate and the motion to permit DCA's counsel to participate on behalf of amici in oral argument should be denied.[3]

8.      Counsel for Google has contacted counsel for the Attorney General and the amici at issue; all oppose this motion and will determine whether to file a response after reviewing Google's submission.

_____

[3] A motion filed only on behalf of amici other than DCA would be a different matter, and Google reserves the right to respond to such a motion in the event one is filed.

## CONCLUSION

For the foregoing reasons, the motion for leave to participate in oral argument should be reconsidered and denied.

Respectfully submitted.

/s/  Peter G. Neiman

FRED KRUTZ
DANIEL J. MULHOLLAND
FORMAN WATKINS & KRUTZ LLP
200 South Lamar Street, Suite 100
City Centre
Jackson, MS  39201
(601) 960-8600

CHRISTOPHER W. JOHNSTONE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

PETER G. NEIMAN
CHRISTOPHER BOUCHOUX
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

JAMIE S. GORELICK
PATRICK J. CAROME
BLAKE C. ROBERTS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

November 17, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/  Peter G. Neiman
PETER G. NEIMAN

No. 15-60205

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

GOOGLE INC.,

*Plaintiff-Appellee*,

*v.*

JAMES M. HOOD, III,

Attorney General of the State of Mississippi, in his official capacity,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Mississippi No. 3:14-CV-981
Before the Honorable Henry T. Wingate

**DECLARATION OF PETER G. NEIMAN IN SUPPORT OF
PLAINTIFF-APPELLEE GOOGLE'S MOTION FOR
RECONSIDERATION OF THE ORDER GRANTING MOTION FOR
LEAVE TO PARTICIPATE IN ORAL ARGUMENT BY *AMICI CURIAE***

FRED KRUTZ
DANIEL J. MULHOLLAND
FORMAN WATKINS & KRUTZ LLP
200 South Lamar Street, Suite 100
City Centre
Jackson, MS  39201
(601) 960-8600

CHRISTOPHER W. JOHNSTONE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

PETER G. NEIMAN
CHRISTOPHER J. BOUCHOUX
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

JAMIE S. GORELICK
PATRICK J. CAROME
BLAKE C. ROBERTS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

November 17, 2015

I, Peter G. Neiman, hereby declare as follows:

1.      I am a partner of Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, and counsel of record for Plaintiff-Appellee Google Inc.  I submit this declaration in support of Plaintiff-Appellee Google Inc.'s Motion for Reconsideration of the Order Granting Motion for Leave to Participate in Oral Argument by Amici Curiae.

2.      Attached hereto as Exhibit A is a true and accurate copy of excerpts from the deposition of Brian Cohen, Director, External State Government Affairs, Motion Picture Association of America, taken on October 8, 2015, *Google Inc. v. Hood*, S.D. Miss., No. 3:14-CV-981.

3.      Attached hereto as Exhibit B is a true and accurate copy of an email and attachment from Meredith Aldridge, Special Assistant Attorney General, Mississippi Attorney General's Office, to Brian Cohen, Director, External State Government Affairs, Motion Picture Association of America, dated March 27, 2013, produced by the Attorney General, *Google Inc. v. Hood*, S.D. Miss., No. 3:14-CV-981.

4.      Attached hereto as Exhibit C is a true and accurate copy of excerpts from the transcript of Motion Hearing oral argument before the Honorable Henry T. Wingate, U.S.D.J., on October 16, 2015, *Google Inc. v. Digital Citizens Alliance*, S.D. Miss., No. 3:15-MC-560.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Executed on November 17, 2015 in New York, New York.


/s/  Peter G. Neiman
PETER G. NEIMAN

# EXHIBIT A

1

2            IN THE UNITED STATES DISTRICT COURT

3        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

4                  NORTHERN DIVISION

5     _____

6     GOOGLE, INC.                )No.

      Plaintiff                   )3:14-cv-981-HTW-LRA

7     vs.                         )

      JIM HOOD, ATTORNEY          )

8     GENERAL OF THE STATE OF     )

      MISSISSIPPI, IN HIS         )

9     OFFICIAL CAPACITY           )

      Defendant                   )

10    _____

11

12

13

14        Videotaped Deposition of Brian Cohen

15                 Washington, D.C.

16                October 8, 2015

17                  9:06 a.m.

18

19

20

21

22

23

24     Reported by:  Bonnie L. Russo

25     Job No. 2146100

1          A.    I was part of a larger team that had

2      folks that assisted with the general plan,

3      media plan that -- so I may have -- but I don't

4      recall.  I may have sent e-mails on behalf of

5      those that were a part of this media team

6      connecting them with others that may have been

7      part of that greater effort.

8                BY MR. RUBIN:

9          Q.    You did work to get op-eds by

10     Attorney General Hood placed in the Wall Street

11     Journal, didn't you?

12               MR. DAVIS:  Objection.  Form and

13     foundation.

14               THE WITNESS:  I don't remember

15     personally working to get an op-ed placed in

16     the Wall Street Journal.

17               BY MR. RUBIN:

18         Q.    You were involved in that effort,

19     weren't you?

20               MR. DAVIS:  Same objection.

21               THE WITNESS:  Like I said, I may

22     have been involved in e-mails relative to

23     others that were on a sort of media team, but I

24     never personally tried to place an op-ed in the

25     Wall Street Journal for General Hood, from what

1          I recall.

2                    BY MR. RUBIN:

3          Q.    Did you have discussions internally

4     at the MPAA about any of these steps?

5          A.    Yes.

6          Q.    Did you have discussions with the

7     MPAA member studios about any of these steps?

8          A.    And by "steps," I'm sorry, can

9     you -- which steps?

10         Q.    Any of these bullet -- bulleted

11    items in the Boston meeting proposed plan

12    document produced by Attorney General Hood at

13    D00907 to 908?

14         A.    Yes.

15         Q.    Did you have a discussion about any

16    of the steps in that document with anyone else

17    other than the MPAA and the MPAA member

18    studios?

19         A.    Yes.

20         Q.    With whom, other than the MPAA and

21    the member studios, did you have those

22    discussions?

23         A.    Tom Galvin.

24         Q.    What did you discuss about this plan

25    with Tom Galvin?

Page 162

1          A.    I just remember, generally, that

2      they were also looking into these issues and I

3      believe they were also a stakeholder that

4      General Hood and others were interested in

5      dialoguing with as part of their preparation

6      for Boston.

7          Q.    This plan is about more than

8      dialoguing, right?

9              MR. DAVIS:  Objection.  Form and

10     foundation.

11             THE WITNESS:  Sure.

12              BY MR. RUBIN:

13         Q.    What did you talk to MPAA member

14     studios about with respect to the Boston

15     meeting plan?

16         A.    I think all the general components.

17     I don't remember a specific conversation with a

18     specific studio.  I mean, this -- these were

19     sort of the general components to some of the

20     different mechanisms that were in place to,

21     again, continue the conversation from the

22     Florida NAAG IP Committee meeting and to

23     prepare for what would be another good platform

24     to have a discussion on these issues in Boston.

25         Q.    Did you forward this plan to anyone?

EXHIBIT B

## MEREDITH ALDRIDGE

| | |
|---|---|
| **From:** | MEREDITH ALDRIDGE |
| **Sent:** | Wednesday, March 27, 2013 12:06 PM |
| **To:** | Brian_Cohen@mpaa.org; BLAKE BEE |
| **Subject:** | RE: Checking In (CONFIDENTIAL) |
| **Attachments:** | ProposedPlan.BostonMeeting.docx |

Brian —

My apologies. As Murphy's law works, my son got sick my last week of work here, and I was out yesterday. Here is what we have so far. Please make sure you keep it confidential — we don't want the word getting out about the plans.

Meredith M. Aldridge
Executive Counsel
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-4204
E-mail: maldr@ago.state.ms.us

This message is being sent by the Office of the Attorney General for the State of Mississippi and is intended only for the use of the individual to which it is addressed and may contain information that is legally privileged or confidential. If you are not the intended recipient, you are hereby notified that any distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the original sender or the Office of the Attorney General at (601) 359-3680 immediately by telephone or by return e-mail and delete this message from your computer. Thank you.

---

**From:** Brian_Cohen@mpaa.org [mailto:Brian_Cohen@mpaa.org]
**Sent:** Tuesday, March 26, 2013 8:45 AM
**To:** MEREDITH ALDRIDGE; BLAKE BEE
**Subject:** Checking In

Hey Meredith and Blake,

Hope you are both well. I just left a voicemail for Meredith. I still wasn't sure if you guys have passed the baton just yet, so I wanted to follow up with both. I was in Tennessee for the Southern AGs meeting last week, and General Hood mentioned you all had written down a rough outline of some thoughts on the next meeting, Boston, and other potential vehicles for the committee , that was partially based on the dinner conversation from February. He asked that I reach out to see if you might be able to pass this written outline along. I am meeting with David Green today, and we are going to bounce some ideas around and see if we can add some additional food for thought to your vision. If you wouldn't mind passing along whatever General Hood was referring to that would be much appreciated!

Also, he mentioned you guys were actively looking at the Google letter and expected it to go out soon. We, of course, support any and all mechanisms to ensure accountability and responsiveness to the important questions at hand, so we appreciate you guys doing that! When it goes out, we'd love to see the final.

Finally, check out this report from the FTC yesterday. It's a good example of how the voluntary ratings system for the motion picture industry works!

D000904

Thanks again!
Brian

http://www.ftc.gov/opa/2013/03/mysteryshop.shtm).



**FOR IMMEDIATE RELEASE**
March 25, 2013

## FEDERAL TRADE COMMISSION SURVEY ON FINDS COMPLIANCE WITH MOVIE RATING SYSTEM AT ALL-TIME HIGH

**Washington** – The Federal Trade Commission (FTC) today announced the results of an undercover shopper survey which found the enforcement of the film industry's voluntary rating system at an all-time high with 76% of underage shoppers being turned away from R-rated films. The survey also demonstrated steady improvement in rating enforcement among DVD retailers. Less than one-third of child shoppers were able to purchase DVDs of R-rated movies. The following is a comment from Senator Chris Dodd, Chairman and CEO of The Motion Picture Association of America (MPAA):

"Since the rating system was created 44 years ago, the MPAA and our member companies have been dedicated to giving parents the tools and information about the content of our films so that they can make the best decisions possible about what they allow their children to see."

"This report reinforces the importance and effectiveness of our industry's voluntary rating system. But that system is only as good as its enforcement. The National Association of Theater Owners (NATO) has been a tremendous partner since the creation of the voluntary rating system. We congratulate them not only for their dedication to enforcing the system, but their commitment to America's families as well."

The voluntary rating system was created in 1968 by then-MPAA Chairman Jack Valenti. This system equips parents with comprehensive and easy to digest resources. In addition to letter ratings, the Classification & Ratings Administration (CARA) provides brief descriptions of the specifics behind a movie's rating. These descriptors apply to every movie rated G, PG, PG-13, R and NC-17, identifying the content in the movie that raised it to that rating level. Moreover, modifiers and unique language applied to each descriptor are intended to give an even more complete picture about what parents can expect their children to see when they go to a particular movie.

A copy of the report is available here: http://www.ftc.gov/opa/2013/03/mysteryshop.shtm).

D000905

Brian Cohen
Director, External State Government Affairs
Motion Picture Association of America
1600 Eye Street, NW
Washington, DC 20006

Email:   brian_cohen@mpaa.org
Desk:    202-378-9170

3

**Boston Meeting – Proposed Plan**

- We are awaiting requested responses from November meeting participants. To date, only Mastercard and MPAA have responded. IP co-chairs will make follow up calls next week.

- Because search engines were the focus of the November meeting, we will narrow the topic for the Boston meeting to Google, the largest search engine.

- Assuming Google does not fully respond to the request for follow up info, we propose the following steps:

-
    - **Follow Up Call:** Set up a call with Google, which will include Martha Coakley, Ken Cuccinellui, David Louie, and Catherine Cortez Masto.

    - **NAAG Session:** Get on the agenda for the NAAG summer meeting for an hour session. The session needs to be closed for at least part of the time. During that session, we propose series of live and taped segments that show online purchases of counterfeit goods. Possibilities include: (i) prescription painkiller that advertises with Google; (ii) an illegal drug, such as heroin; (iii) download of a currently-running R rated movie by a minor (volunteer from NAAG); and (iv) assault weapon delivered to home, in violation of federal firearm laws (taped purchase via an investigator from our office). For the movie and firearm, we need to confirm that Google has knowledge of the current releases and federal firearm laws. Other backup options for buys are air bags and music. Following the live buys and video of recorded buys, we propose a panel discussion of possible next steps for AGs.

    - **Research:** Research possible causes of action against Google, and prepare memo for distribution to AGs. Our attorneys are researching and preparing this memo, which likely will focus on unfair trade practices. As part of this research, we need to determine how the autocomplete and search results are formulated, i.e. based on user inquiries or advertising dollars. The memo will include a list of possible courses for the AGs.

    - **Media:** We want to make sure that the media is at the NAAG meeting. We propose working with MPAA (Vans), Comcast, and NewsCorp (Bill Guidera) to see about working with a PR firm to create an attack on Google (and others who are resisting AG efforts to address online piracy). This PR firm can be funded through a nonprofit dedicated to IP issues. The "live buys" should be available for the media to see, followed by a segment the next day on the Today Show (David green can help with this). After the Today Show segment, you want to have a large investor of Google (George can help us determine that) come forward and say that Google needs to change its behavior/demand reform. Next, you want NewsCorp to develop and place an editorial in the WSJ emphasizing that

Google's stock will lose value in the face of a sustained attack by AGs and noting some of the possible causes of action we have developed.

- **Regulatory Action:** Following the media blitz, you want Bill Guidera and Rick Smotkin to work with the PR firm to identify a lawyer specializing in SEC matters to work with a stockholder. This lawyer should be able to the identify the appropriate regulatory filing to be made against Google.

- **AG action:** As a final step, if necessary, we propose that AGs will issue CIDs to Google. We have researched these issues in the past and can draw from that experience.

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


GOOGLE, INC.                                    PLAINTIFF

VS.                        CIVIL NO. 3:15mc00560HTW-LRA

DIGITAL CITIZENS ALLIANCE, ET AL.         DEFENDANTS


AND

GOOGLE, INC.                                    PLAINTIFF

VS.                        CIVIL NO. 3:15mc00561HTW-LRA

TWENTY-FIRST CENTURY FOX, INC., ET AL.       DEFENDANTS

AND

GOOGLE, INC.                                    PLAINTIFF

VS.                        CIVIL NO. 3:15mc00577HTW-LRA

ORRICK, HERRINGTON & SUTCLIFFE, LLP           DEFENDANTS




MOTION HEARING


BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
OCTOBER 16, 2015
JACKSON, MISSISSIPPI


REPORTED BY:  CHERIE GALLASPY BOND
              Registered Merit Reporter
              Mississippi CSR #1012
_____
245 E. Capitol Street, Room 120
Jackson, Mississippi  39201
(601) 965-4410

```
 1      APPEARANCES:

 2

        FOR THE PLAINTIFF:              MR. FRED KRUTZ
 3                                      MR. DANIEL MULHOLLAND
                                        MR. PETER NEIMAN (Via phone)
 4                                      MR. MICHAEL RUBIN
                                        MR. PETER HOLM
 5

        FOR ATTORNEY GENERAL HOOD:      MR. JOHN KITCHENS
 6

        FOR DIGITAL CITIZENS ALLIANCE:  MR. ELI KAY-OLIPHANT
 7

        FOR MPAA, TWENTY FIRST CENTURY FOX
 8      NBC UNIVERSAL AND VIACOM:       MR. DAVID HANDZO
                                        MR. SCOTT WILLKINS
 9                                      MR. MICAH COGEN

10      LOCAL COUNSEL FOR
        JENNER & BLOCK:                 MR. CLIFF JOHNSON
11
        FOR ATTORNEY GENERAL HOOD:      MR. JOHN KITCHENS
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  But this participation in subsequent

2     telephone calls, did it take the character of joining in with

3     some strategy to force Google to change its outlook on its work

4     and its directions?

5          MR. KAY-OLIPHANT:  I don't know if I would -- with

6     respect, Your Honor, I'm not sure I would use those exact

7     words.  I think that the telephone calls were part of a group

8     that was trying to organize lawful petitioning activity,

9     requesting the Attorney General to approach Google about the

10    problems that the nonparties saw with what Google may or may

11    not have been facilitating in terms of criminal activity on the

12    Internet.  And so the answer is, they did participate on those

13    telephone calls.

14         THE COURT:  Was anyone from your company deposed?

15         MR. KAY-OLIPHANT:  As of now, no.

16         THE COURT:  And has anyone from your company submitted

17    an affidavit?

18         MR. KAY-OLIPHANT:  No, Your Honor.

19         THE COURT:  All right.  Thank you.

20         MR. KAY-OLIPHANT:  You're welcome.  Now, referencing

21    back to the reports that I was speaking about that DCA

22    publishes, many of those reports, all of those different issues

23    that I sort of listed off that DCA has published on in no way

24    discuss or are related to Google.  And some of DCA's

25    publications are critical of Google, and rightly so for a lot

1   of the reasons that Mr. Handzo talked about when he was giving

2   his presentation about the concerns that the other nonparties

3   have about whether or not Google may or may not be facilitating

4   or in any way contributing to criminal activity on the

5   Internet.

6          But rather than responding substantively to the

7   Digital Citizens Alliance and its valid criticisms by using its

8   First Amendment rights to publish these reports, Google instead

9   chooses to litigate.  This is Google's strategy to sidetrack

10  DCA from its mission and to drain DCA of critical resources.

11  And Google has demonstrated that it will make this process as

12  difficult and disruptive as possible.

13         The burden on DCA to comply further, more than it

14  already has by giving all of the communications back and forth

15  with Attorney General Hood's offices, will be massively costly

16  in terms of time and resources.  This is exactly what Google

17  wants.  When evaluating the burden on DCA, please remember that

18  this is Google's intent, to burden and to hinder DCA's ability

19  to do its substantive work by imposing litigation costs.

20  Google showed this was its true motive when it initiated this

21  litigation, filed its motion to compel, after only one meet and

22  confer with Digital Citizens Alliance, without attempting to in

23  any way resolve, limit, or crystallize the disputes between the

24  parties, and even when DCA had put Google on notice that it was

25  still investigating its privilege claim.

1          My third point has to do with Mike Moore, which has

2     come up previously, and I assume you were waiting for me to get

3     to this.  DCA has an attorney-client relationship with Mike

4     Moore.  Google's counsel has shown you, and we've seen that

5     document as well, that Attorney General Hood deputized Mike

6     Moore and his firm for limited purposes associated with his

7     investigation of Google.

8          Counsel for Google sort of bandies around with the

9     concept of the fact that Mike Moore was actually doing lobbying

10    activity, but I don't understand how that could be true when he

11    was deputized by the Attorney General, when he was acting as

12    our attorney.  And counsel for Google, although he says that

13    Mike Moore was just doing lobbying activity, and he can say it

14    over and over again, the only evidence that's out there is my

15    explanation that Mike Moore is DCA's attorney and the evidence

16    that Google's counsel has put on that he was acting as attorney

17    for Attorney General Hood.

18          DCA understands that for certain work, therefore, Mike

19    Moore and his firm was operating and continues to operate as a

20    deputy of the Attorney General, but that does not eviscerate

21    DCA's privilege as to its attorney-client privilege.  It does

22    not eviscerate our ability to claim attorney-client privilege

23    for valid communications with our attorney where we are seeking

24    attorney advice and recommendations.

25          Due to the time and resources required to evaluate and

1  segregate which of DCA's communications with Mike Moore were

2  actually meant to be communications with Attorney General

3  Hood's office, where he was wearing the hat of a deputy of

4  Attorney General Hood, which of DCA's communications with Mike

5  Moore are attorney-client privileged and were meant for him to

6  be wearing the hat of DCA's attorney at the time, and which of

7  DCA's communications with Mike Moore are, neither of those

8  would be extreme for a nonparty like DCA.

9        DCA believes it should not have to do that significant

10  work considering the limited need that Google has for these

11  documents.  And in any event, such sorting may require

12  in-camera review followed by a significant logging of the

13  documents and then production.  When the documents are

14  available elsewhere as they are here, DCA maintains it should

15  not bear this burden.  Google can get these documents from

16  Attorney General Hood, who deputized Mike Moore.  They are

17  available there.

18        Simply put, DCA respectfully submits that it has done

19  much to comply.  What it has done should satisfy Google's

20  needs, and enough is enough.  DCA has given Google much of what

21  it wants at great expense, and requiring more would impose a

22  cost disproportionate to Google's further needs.  DCA thus

23  requests that this court quash the remainder of the nonparty

24  subpoena as to DCA, award DCA its significant expenses,

25  including reasonable attorneys fees and costs pursuant to Rule

1    45.

2         I'm happy to continue, but unless you have specific

3    questions for me, I would not burden the court with further

4    argument.

5              THE COURT:  All right.  Thank you.

6              MR. WILKENS:  Good afternoon, Your Honor.

7              THE COURT:  Good afternoon.

8              MR. WILKENS:  I'm Scott Wilkens from Jenner & Block,

9    and I'm here representing the three studios, MPAA members,

10   Twenty-First Century Fox, NBC Universal, and Viacom.

11        And I won't repeat Mr. Handzo's introductory remarks

12   regarding piracy and how much piracy affects the MPAA and its

13   member studios.  I don't want to go over that ground again.

14   And also, Mr. Handzo covered many issues that also apply to

15   Google's motion to compel against the studios, and I will only

16   touch on those issues briefly as needed.  My client certainly

17   adopts Mr. Handzo's remarks as well, and I don't want to waste

18   the court's time by being overly repetitive here.

19        So with respect to the studios, Google argues that it

20   needs discovery from these three third parties, NBC, Fox and

21   Viacom, in order to prove the motives of AG Hood in

22   Mississippi.  We have already given Google the studio's

23   communication with Attorney General Hood.  We have given Google

24   information showing political contributions to Attorney General

25   Hood and to the Democratic Attorneys General Association.  That